No. 25-7114

In the

# United States Court of Appeals
## for the District of Columbia Circuit

DOE CORPORATION 1,

DOE CORPORATION 2,

DOE CORPORATION 3,

DOE CORPORATION 4,

*Plaintiffs-Appellants,*

v.

INTER-AMERICAN DEVELOPMENT BANK,

*Defendant-Appellee.*

On Appeal from the United States District Court for the District of Columbia, Case No. 1:25-cv-01404-UNA

## BRIEF OF APPELLANTS

Margaret E. Krawiec
Michael A. McIntosh
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
margaret.krawiec@skadden.com

*Counsel for Plaintiffs-Appellants Doe Corporation 1, Doe Corporation 2, Doe Corporation 3, and Doe Corporation 4*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

In accordance with Circuit Rules 26.1 and 28(a)(1) and Federal Rule of Appellate Procedure 26.1, Plaintiffs-Appellants in Case No. 25-7114, Doe Corporation 1, Doe Corporation 2, Doe Corporation 3, and Doe Corporation 4 (collectively, "Doe Corporations") certify as follows:

### A.     Parties and Amici

Doe Corporations are the Plaintiffs in the District Court below and the Appellants in this Court.[*]

The Inter-American Development Bank (the "IDB") is the Defendant in the District Court below and the Appellee in this Court.  The District Court has not issued a summons in this action, pending resolution of Doe Corporations' request to proceed with the action pseudonymously, the issue

---

[*]  Doe Corporation 1, Doe Corporation 2, Doe Corporation 3, and Doe Corporation 4 are pseudonyms used to protect Plaintiffs-Appellants' true identities.  Doe Corporations' request to litigate this action in the District Court under those pseudonyms is the sole subject of this interlocutory appeal.

Plaintiffs-Appellants' Corporate Disclosure Statements under Circuit Rule 26.1 are located in Doe Corporations' sealed Appendix, which they are submitting contemporaneously with this brief under seal.  *See* App. (Sealed Supp.) 54–57.

presently on appeal before this Court.  As such, the IDB has neither been served with process nor otherwise appeared in this action.

Nonparty Eugene Volokh, an individual, filed a motion in the District Court to intervene for the limited purpose of moving to unseal certain of Doe Corporations' filings in support of their Motion to Proceed Under Pseudonym.  ECF No. 10 (Mot. to Intervene and Mot. to Unseal).† The District Court has not ruled on Volokh's motion, and he has thus not yet been joined to the action in any capacity.

As of the date of this filing, there have otherwise been no *amici* or intervenors in the District Court, nor have there been any *amici* or intervenors in this Court.

### B.    Rulings Under Review

Doe Corporations seek review of the following orders issued by Chief Judge James E. Boasberg in *Doe Corp. 1 v. Inter-American Development Bank*, No. 1:25-cv-01404 (D.D.C. filed May 8, 2025):

---

†    Doe Corporations' citations to "App. __" refer to entries in Doe Corporations' Appendix, which is being filed contemporaneously with this Brief. Doe Corporations' citations to "ECF No. ___" refer to docket entries in the underlying District Court action, *Doe Corp. 1 v. Inter-American Development Bank*, No. 1:25-cv-01404-UNA (D.D.C. filed May 8, 2025), that Doe Corporations have not reproduced in the Appendix.

a.	The May 14, 2025 Memorandum Opinion and Order (as revised May 15, 2025).  *See* App. 32–37.  This opinion is not yet reported, but it is available at 2025 WL 1403912 (D.D.C. May 14, 2025).

b.	The July 30, 2025 Memorandum Opinion and Order.  *See* App. 38–44.  This opinion is not yet reported, but it is available at 2025 WL 2377322 (D.D.C. July 30, 2025).

**C.	Related Cases**

This case has not previously been before this Court or any court other than the District Court below.  Doe Corporations are unaware of any related cases other than the case pending before the District Court below.

Respectfully submitted,

*/s/ Margaret E. Krawiec*
Margaret E. Krawiec
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
margaret.krawiec@skadden.com

*Counsel for Plaintiffs-Appellants Doe Corporation 1, Doe Corporation 2, Doe Corporation 3, and Doe Corporation 4*

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES......... ii

GLOSSARY ....................................................................................... xi

INTRODUCTION ...............................................................................1

JURISDICTIONAL STATEMENT ......................................................5

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW...........8

PERTINENT STATUTES AND REGULATIONS...............................9

STATEMENT OF THE CASE...............................................................9

      A.     Factual Background ...........................................................9

            1.     The Commercial Project and Financing Agreements.........9

            2.     The IDB's Investigation and Commencement of Sanctions Proceedings ...........................................................10

      B.     Procedural Background...................................................14

            1.     Complaint and Motion for a Preliminary Injunction .......14

            2.     Motion to Proceed Under Pseudonym ...............................17

            3.     Motion to Reconsider .........................................................21

SUMMARY OF THE ARGUMENT....................................................22

Standard of Review...........................................................................26

Argument ..........................................................................................28

I.     THE DISTRICT COURT APPLIED THE WRONG CRITERIA TO ADJUDICATE DOE CORPORATIONS' MOTIONS. .....................28

**TABLE OF CONTENTS**
(continued)

Page

II.   THE DISTRICT COURT ABUSED ITS DISCRETION BY
      FAILING TO PROPERLY BALANCE THE FIVE FACTORS
      INCLUDED IN THE GOVERNING STANDARD. ...............................34

      A.   The District Court's Rulings Are Unjustified and Extreme
           Outliers...............................................................................................35

      B.   The District Court Improperly Gave Equal Weight to
           Each Factor. ......................................................................................37

      C.   The District Court's Rulings Have Far-Reaching
           Consequences.....................................................................................41

III.  THE DISTRICT COURT ABUSED ITS DISCRETION IN
      MISAPPLYING THE SECOND AND FOURTH FACTORS................45

      A.   The District Court Abused Its Discretion in Concluding
           that the Second Factor Supports Disclosure of Doe
           Corporations' Identities..................................................................46

      B.   The District Court Abused Its Discretion in Concluding
           that the Fourth Factor Supports Disclosure of Doe
           Corporations' Identities..................................................................48

Conclusion.............................................................................................................55

CERTIFICATE OF COMPLIANCE ..................................................................57

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abdelhady v. George Washington University*,
89 F.4th 955 (D.C. Cir. 2024) ........................................................6

*Brown Rudnick LLP v. Doe*,
No. CV 25-853 (JEB), 2025 WL 1287046 (D.D.C. Apr. 9, 2025) .............36

*Bufkin v. Collins*,
145 S. Ct. 728 (2025) .............................................................26, 27

*Chappell-Johnson v. Powell*,
440 F.3d 484 (D.C. Cir. 2006) ..............................................26, 41

*Cobell v. Jewell*,
802 F.3d 12 (D.C. Cir. 2015) ........................................................7

*Digit. Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) ......................................................................6

*Doe v. Hill*,
141 F.4th 291 (D.C. Cir. 2025) .................................... 5, 26, 28, 29, 30, 33,
.................................................... 37, 39, 40, 41, 46, 47, 48, 50, 51, 53, 54

*Doe Corp. 1 v. Inter-American Dev. Bank*,
No. 1:25-cv-01404 (D.D.C. filed May 8, 2025) .........................................14

*Dyson v. Dist. of Columbia*,
710 F.3d 415 (D.C. Cir. 2013) ..............................................27, 55

*Favia v. Ind. Univ. of Pa.*,
7 F.3d 332 (3d Cir. 1993) ..............................................................6

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) ......................................................7

*Foman v. Davis*,
371 U.S. 178 (1962) ......................................................................36

*Fox Television Stations, Inc. v. FilmOn X, LLC*,
968 F. Supp. 2d 134 (D.D.C. 2013) ................................................6

*Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs.*,
892 F.3d 348 (D.C. Cir. 2018) ..................................................27, 41

*Frew v. Young*,
992 F.3d 391 (5th Cir. 2021)......................................................6, 7

*In re Grand Jury Subpoena No. 11116275*,
No. 11-527 (RCL), 2012 WL 692866 (D.D.C. Feb. 23, 2012) ...........51, 525

*J.W. v. Dist. of Columbia*,
318 F.R.D. 196 (D.D.C. 2016)........................................................49

*John Doe Co. v. CFPB*,
321 F.R.D. 31 (D.D.C. 2017).................................. 31, 32, 33, 34, 35, 36, 44

*John Doe Co. No. 1 v. CFPB*,
195 F. Supp. 3d 9 (D.D.C. 2016) .................... 31, 33, 34, 35, 36, 44, 45, 52

*John Doe Corp. v. Public Co. Accounting Oversight Board*,
No. H-24-1103, 2024 WL 5275034 (S.D. Tex. June 10, 2024)...........44, 45

*Kickapoo Tribe of Indians of the Kickapoo Rsrv. in Kan. v. Babbitt*,
43 F.3d 1491 (D.C. Cir. 1995) ..................................................26, 27

*Lance v. United Mine Workers of Am. 1974 Pension Tr.*,
400 F. Supp. 2d 29 (D.D.C. 2005) ..................................................6

*Nat'l Ctr. for Mfg. Scis. v. Dep't of Def.*,
199 F.3d 507 (D.C. Cir. 2000) ......................................................55

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Pigford v. Perdue*,
  950 F.3d 886 (D.C. Cir. 2020) .......................................27, 28, 55

*R.F.M. v. Nielsen*,
  365 F. Supp. 3d 350 (S.D.N.Y. 2019) ..................................51, 52

*In re Sealed Case*,
  931 F.3d 92 (D.C. Cir. 2019) ......................................... 5, 18, 23, 26, 28, 29,
  ............................................................ 30, 31, 33, 37, 38, 39, 46, 47, 48, 51

*In re Sealed Case*,
  971 F.3d 324 (D.C. Cir. 2020) .......................... 18, 24, 31, 32, 33, 37, 38, 39

*Smalls v. United States*,
  471 F.3d 186 (D.C. Cir. 2006) ....................................................26

*TIG Ins. Co. v. Republic of Argentina*,
  110 F.4th 221 (D.C. Cir. 2024) ....................................................55

*U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*,
  583 U.S. 387 (2018) ..............................................................26, 27

*United States v. Edmond*,
  924 F.2d 261 (D.C. Cir. 1991) ....................................................36

## STATUTES

22 U.S.C. § 283f ...................................................................5

28 U.S.C. § 1331 ...................................................................5

28 U.S.C. § 1332 ...................................................................5

28 U.S.C. § 1291 .................................................................5, 6

# TABLE OF AUTHORITIES
(continued)

## RULES

D.C. Cir. R. 27 ........................................................................22

D.C. Cir. R. 32.1(b)(3) ..........................................................48

D.C. Dist. Ct. LR 40.7(f) ..........................................................5

Fed. R. App. P. 4(a)(1) ............................................................8

Fed. R. App. P. 4(a)(4)(A) ........................................................7

Fed. R. App. P. 27 ..................................................................22

Fed. R. Civ. P. 10(a) ..............................................................28

Fed. R. Civ. P. 59(e) ................................................................6

# GLOSSARY

| | |
|---|---|
| CFPB | Consumer Financial Protection Bureau |
| Charter | Agreement Establishing the Inter-American Development Bank, *opened for signature* Apr. 8, 1959, 10 U.S.T. 3068 |
| Orders | Order Denying Plaintiffs' Motion to Proceed Under Pseudonym and Order Denying Plaintiffs' Motion to Reconsider |
| IDB | Inter-American Development Bank |
| IDB Invest | Inter-American Investment Corporation |
| July 30 Order | July 30, 2025 Order Denying Plaintiffs' Motion to Reconsider |
| May 14 Order | May 14, 2025 Order Denying Plaintiffs' Motion to Proceed Under Pseudonym |
| Motion | Plaintiffs' Motion to Proceed Under Pseudonym |
| Motion to Reconsider | Plaintiffs' Motion to Reconsider the May 14, 2025 Order Denying Plaintiffs' Motion to Proceed Under Pseudonym |
| Notice | Notice of Administrative Action |
| OII | Office of Institutional Integrity |

**<u>INTRODUCTION</u>**

Plaintiffs Doe Corporation 1, Doe Corporation 2, Doe Corporation 3, and Doe Corporation 4 (collectively, "Doe Corporations") entered into a series of agreements with Defendant Inter-American Development Bank (the "IDB") to obtain financing for a commercial project. Using those contracts as a hook, and despite lacking any authority to do so, the IDB initiated formal internal enforcement proceedings (referred to as "sanctions proceedings") against Doe Corporations based exclusively on alleged conduct that predates the parties' contractual relationship by more than a year. The IDB's pursuit of draconian sanctions against Doe Corporations is particularly unwarranted given that Doe Corporations proactively raised reports of the underlying allegations to the IDB's affiliate; Doe Corporations cooperated with that affiliate's subsequent due diligence efforts by providing detailed information and sharing requested documentation to refute the allegations; and the IDB and its affiliate continued to disburse loan funds pursuant to the parties' agreements both during and after that diligence process.

Doe Corporations initiated this action in the District Court to halt the IDB's illegitimate and unjustified sanctions proceedings, which—given the

IDB's exceptionally high success rate in its self-adjudicated sanctions proceedings—are almost certain to result in defeat for Doe Corporations, the imposition of onerous sanctions, and indelible reputational harm. At the same time, Doe Corporations moved to litigate the action under pseudonyms to protect their fundamental privacy interests and to safeguard their business from reputational and financial repercussions that will reverberate for years to come. Doe Corporations filed a supporting declaration from a senior official detailing all of the ways in which the public disclosure of Doe Corporations' identities—and the existence and nature of the IDB's one-sided investigation and sanctions proceedings—would cause irreparable reputational harm, crater new business opportunities, and jeopardize existing projects.

The District Court agreed that disclosing Doe Corporations' identities "would likely cause them debilitating reputational and financial hardship." It also concluded that the IDB "would suffer no risk of unfairness" if Doe Corporations proceed pseudonymously. Yet the District Court nevertheless denied Doe Corporations' motion, and then refused Doe Corporations' request that it reconsider that decision. The District Court's decision stands as an extreme outlier—the first known ruling in this Circuit to reject

pseudonymity when a plaintiff establishes a sufficiently strong privacy interest and no risk of prejudice to the opposing party. Worse still, neither order provided any reason for the District Court's pronounced and abrupt departure from precedent, beyond noting that three additional factors cut against pseudonymity and observing that three is more than two. The end result is that Doe Corporations are faced with the impossible choice between continuing their challenge to the IDB's unlawful sanctions proceedings and suffering "debilitating reputational and financial hardship," or succumbing to the IDB's improper usurpation of enforcement authority.

The District Court's denial of Doe Corporations' Motion to Proceed Under Pseudonym, and Doe Corporations' resulting predicament, sharply conflicts with this Court's precedent. *First*, the District Court disregarded this Court's teachings that the five-factor test that informs the pseudonymity inquiry is merely a guide that must be adjusted based on case-specific circumstances. Eschewing appropriate tailoring given Doe Corporations' corporate status, the District Court uncritically considered two factors that never favor pseudonymity in a case with a non-individual plaintiff. *Second*, the District Court failed entirely to balance the five factors that it applied. It did not explain why its ruling was the first in this Circuit to compel

disclosure when the plaintiff's privacy interests and lack of prejudice to the defendant favored pseudonymity, it gave equal and decisive weight to two factors that non-individual plaintiffs can never satisfy, and it did little more than robotically tally the factors (three against pseudonymity to two in favor). **Third**, the District Court misapplied two of the factors that it found to weigh against pseudonymity. Even under its flawed analytical method, then, it should have granted Doe Corporations' motion because four of the five factors support pseudonymity.

If allowed to stand and applied moving forward, the District Court's orders will significantly curb attempts to challenge government and quasi-government action. The District Court's analysis effectively precludes any non-individual plaintiff from litigating pseudonymously when suing a government actor. And fears of reprisal or reputational harm undoubtedly will chill entities from bringing suits against the government in their own names.

For all these reasons, and as explained further below, this Court should reverse the judgment of the District Court and permit Doe Corporations to litigate this action pseudonymously.

## JURISDICTIONAL STATEMENT

A. The District Court had subject-matter jurisdiction over the underlying case pursuant to 22 U.S.C. § 283f and 28 U.S.C. §§ 1331 and 1332. The Chief Judge acted pursuant to D.C. District Court Local Rule 40.7(f) in adjudicating ex parte Doe Corporations' Motion to Proceed Under Pseudonym (the "Motion") and Motion to Reconsider the May 14, 2025 Order Denying Plaintiff's Motion to Proceed Under Pseudonym (the "Motion to Reconsider").

B. This Court has jurisdiction to review the District Court's May 14, 2025 Order Denying Plaintiffs' Motion to Proceed Under Pseudonym (the "May 14 Order"), *see* App. 32–37, and the July 30, 2025 Order Denying Plaintiffs' Motion to Reconsider (the "July 30 Order" and, along with the May 14 Order, the "Orders"), *see id*. 38–44. This Circuit has recognized that orders denying motions to proceed pseudonymously are immediately appealable pursuant to 28 U.S.C. § 1291 and the collateral-order doctrine. *See Doe v. Hill*, 141 F.4th 291, 294–95 (D.C. Cir. 2025) (citing *In re Sealed Case*, 931 F.3d 92, 95–96 (D.C. Cir. 2019) ("*In re Sealed Case I*")).

Doe Corporations timely appealed both Orders. As an immediately appealable collateral order, the May 14 Order is "treated as 'final'" under 28

U.S.C. § 1291. *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994); *see also*, *e.g.*, *Abdelhady v. George Wash. Univ.*, 89 F.4th 955, 956–57 (D.C. Cir. 2024) (noting that collateral orders are reviewable under Section 1291); *Frew v. Young*, 992 F.3d 391, 396–97 (5th Cir. 2021) ("An appealable collateral order . . . is a 'final decision' under 28 U.S.C. § 1291." (citation omitted)). Doe Corporations' Motion to Reconsider thus arose under Rule 59(e). *See, e.g.*, Fed. R. Civ. P. 59(e) (providing mechanism for seeking "alter[ation] or amend[ment of] a judgment"); *Lance v. United Mine Workers of Am. 1974 Pension Tr.*, 400 F. Supp. 2d 29, 31 (D.D.C. 2005) (explaining that the default rule in this Circuit is to "construe[]" motions to reconsider "as motions to clarify or alter or amend judgment under Rule 59(e)"); *Frew*, 992 F.3d at 397 (concluding that district court should have considered motion to reconsider immediately appealable collateral order under Rule 59(e)).

That Doe Corporations cited Rule 54(b) in their Motion to Reconsider is not controlling. Courts routinely "look beyond the motion's caption to its substance" when determining how to properly classify a motion to reconsider. *Fox Television Stations, Inc. v. FilmOn X, LLC*, 968 F. Supp. 2d 134, 139 (D.D.C. 2013) (quoting *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993)). And Rule 54(b) facially did not apply because it "operates" only "before any

appealable final judgment has been entered." *Cobell v. Jewell*, 802 F.3d 12, 19 (D.C. Cir. 2015). In similar circumstances, courts have rejected a district court's consideration of a motion to reconsider under Rule 54(b) instead of Rule 59(e). *See, e.g., Frew*, 992 F.3d at 396–97 (deeming Rule 54(b) "inapplicable" to motion to reconsider immediately appealable collateral order and holding that "Rule 59(e) was the proper procedural mechanism under which the district court ought to have considered the motion to reconsider"). Doe Corporations' arguments in the Motion to Reconsider, moreover, equally supported reconsideration under Rule 59(e). *See, e.g., Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (explaining that Rule 59(e) motions should be granted where there is a "need to correct a clear error or prevent manifest injustice") (citation omitted).

Accordingly, Doe Corporations' timely filing of the Motion to Reconsider on May 19 extended their time to appeal the May 14 Order until within thirty days after entry of the July 30 Order. Fed. R. App. P. 4(a)(4)(A). Doe Corporations thereafter timely filed their notice of appeal on August 4. ECF No. 15 (Not. of Appeal).

Doe Corporations timely noted their appeal of the July 30 Order in that same August 4 notice. *Id.*; *see also* Fed. R. App. P. 4(a)(1).[1]

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court erred by disregarding Doe Corporations' corporate form and applying criteria that non-individual plaintiffs can never satisfy when denying Doe Corporations' Motion to Proceed Under Pseudonym.

2.     Whether the District Court abused its discretion when it failed to balance the factors guiding the pseudonymity inquiry, as this Court has required and reiterated, and instead mechanically gave each factor—including those that categorically do not apply to non-individual plaintiffs—equal weight.

3.     Whether the District Court abused its discretion in concluding that Doe Corporations had neither (i) shown a risk of retaliatory harm under the District Court's interpretation of that factor, despite elsewhere crediting evidence that third parties would take adverse action against Doe

---

[1]  In any event, as explained below, each order equally and independently supports reversal of the District Court's decision to reject Doe Corporations' request to proceed under pseudonym.

Corporations upon disclosure of their identities; nor (ii) established that the IDB's status as a quasi-government actor supported pseudonymity, even though Doe Corporations seek individualized relief based on pure legal questions.

## PERTINENT STATUTES AND REGULATIONS

The pertinent statutes and regulations are reproduced in the attached Addendum A.

## STATEMENT OF THE CASE

**A.    Factual Background**

**1.    The Commercial Project and Financing Agreements**

The IDB is an international financial institution established pursuant to the Agreement Establishing the Inter-American Development Bank, *opened for signature* Apr. 8, 1959, 10 U.S.T. 3068 (the "Charter").  *See* App. 13 (Compl.).  Per its Charter, the IDB's "purpose" is to "contribut[e] to the acceleration of the process of economic and social development of the regional development member countries, individually and collectively."  *Id.*   The Charter grants the IDB specific "functions" to implement that "purpose," as well as carefully circumscribed authority to "take the necessary measures to ensure that the proceeds of any loan made, guaranteed, or participated in by

the Bank are used only for the purposes for which the loan was granted, with due attention to considerations of economy and efficiency." *Id*.

Doe Corporation 3, a subsidiary of Doe Corporation 1, executed an agreement to complete a commercial project (the "Commercial Project Agreement"). *Id*. 8. In 2018, over a year later, Doe Corporation 3 obtained financing from the IDB and other parties to partially fund the project. *Id.* Doe Corporation 1, Doe Corporation 2, and Doe Corporation 3 entered into a series of contracts with the IDB and those other lenders to govern the terms of the loans. *Id*. 8–9. Doe Corporation 3 received installments of the IDB loan in 2019 and 2020, and Doe Corporations have adequately performed all contractual obligations owed to the IDB and other counterparties. *Id*. 10.

2.    **The IDB's Investigation and Commencement of Sanctions Proceedings**

In 2020, the IDB's Office of Institutional Integrity (the "OII") initiated an investigation into events concerning the granting of the Commercial Project Agreement. App. 10 (Compl.). The OII's investigation centered exclusively on conduct that predates, by more than a year, the beginning of any contractual relationship between Doe Corporations and the IDB, and the disbursement of any funds. *Id*.

Notably, before the OII initiated its investigation into Doe Corporations—and before Doe Corporation 3 received the first loan installment—Doe Corporations proactively informed an IDB affiliate, the Inter-American Investment Corporation ("IDB Invest"), about allegations that had surfaced regarding the award of the Commercial Project Agreement. *Id.* IDB Invest responded by conducting a due diligence inquiry regarding the allegations, which included consultation with outside legal counsel. *Id.* 10–11. Doe Corporations fully cooperated with the diligence process, addressing all requests from IDB Invest and outside counsel and providing responsive information to demonstrate that the allegations were unfounded. *Id.* The information provided was subject to disclosure to the OII. *Id.*

The inquiry did not delay or otherwise impede the disbursement of loan funds from the IDB and IDB Invest; Doe Corporation 3 received the first installment of the loan funds shortly after it had disclosed the allegations to IDB Invest, and it continued to receive additional installments both during and after the diligence process. *Id.* 11. After a period of time, IDB Invest ceased inquiring about the allegations and continued its support of the Commercial Project. *Id.* 10–11.

Nevertheless, well after IDB Invest began its due diligence inquiry, the OII notified Doe Corporations that it was initiating an investigation into the same allegations that Doe Corporations had flagged and IDB Invest apparently had cleared. *Id*. 11. The OII issued a series of requests for documents and information. *Id*. Doe Corporations cooperated with the OII's investigation, providing information that rebutted the allegations, and sought to resolve the matter without the need to resort to adversarial proceedings. *Id*. At the same time, Doe Corporations maintained both that the allegations are without merit and that the IDB lacks any authority to subject them to sanctions proceedings in connection with allegations of wrongdoing that entirely predate any contractual relationship between the parties. *Id*.

The parties' efforts to come to a resolution were unsuccessful, and on September 24, 2024, the OII issued written notice that it was terminating the negotiated resolution process. *Id*. On April 28, 2025, pursuant to the IDB's internal Sanctions Procedures, the IDB's Office of the Sanctions Officer issued formal Notices of Administrative Action (the "Notices") against each of the four Doe Corporations. *Id.* 11–12. The Notices allege that Doe Corporations engaged in so-called "Prohibited Practices," as defined in the IDB's Sanctions Procedures, in connection with the Commercial Project

Agreement.  *Id.*  All conduct underlying these allegations predates the parties' contractual relationship, and none of it relates to the use of funds provided by the IDB.  *Id.*

The Notices triggered formal sanctions proceedings against Doe Corporations, whose response is due by September 29, 2025.[2]  *Id.*  The Notices (and Sanctions Procedures) make clear that Doe Corporations' failure to respond to the allegations will be considered an admission of the allegations and waiver of any future right to appeal the Sanctions Officer's final determination to the IDB's Sanctions Committee.  *Id.*  Either way, once the date to respond passes, a decision could come at any moment.  And given the IDB's near-perfect success rate in sanctions proceedings, a product of the inherent and powerful structural biases in its favor, the ruling almost certainly will find Doe Corporations responsible for wrongdoing and impose sanctions as a result.  *Id.* 22.

Once that happens, the ruling—and punitive sanctions that will almost certainly accompany it—will be made public, absent a timely appeal,

_____

[2]  Although the original Notices required a response by June 27, 2025, App. 12, Doe Corporations and the IDB subsequently agreed to extend this deadline until September 29, 2025.

effectively mooting Doe Corporations' request for relief.  ECF No. 1-10 § 4.9 (the IDB's 2015 Sanctions Procedures; noting that after the window for submissions is complete, "the Sanctions Officer . . . shall issue a Determination"). Even if Doe Corporations appeal the ruling to the Sanctions Committee, they again face near-certain defeat followed by near-immediate publication of the IDB's findings and punishments.  *See* ECF No. 3-1, at 36 (Mem. in Support of Mot. for Prelim. Inj.); *see also* ECF No. 1-10 § 8.2 ("The imposition of any Sanction shall be public.").

## B.    Procedural Background

### 1.    Complaint and Motion for a Preliminary Injunction

Upon receiving the Notices, Doe Corporations promptly brought suit against the IDB on May 8, 2025, asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and seeking injunctive, monetary, and declaratory relief.  *See* App. 24–31 (Compl.); *Doe Corp. 1 v. Inter-Am. Dev. Bank*, No. 1:25-cv-01404-UNA (D.D.C. filed May 8, 2025).  The Complaint alleges that the IDB waived any immunity it may otherwise have had from these claims both through its contractual agreements with Doe Corporations and by way of its Charter.  App. 7, 19–22 (Compl.).

Contemporaneous with the Complaint, Doe Corporations also filed a Motion for a Preliminary Injunction requesting that the District Court bar the IDB from continuing the pending enforcement proceedings, or disclosing any information relating to those proceedings or the underlying allegations, pending resolution of Doe Corporations' claims. ECF No. 3 (Mot. for Prelim. Inj.). In support of their request, Doe Corporations outlined in detail the irreparable reputational harm that it will suffer — regardless of the ultimate result of the IDB's proceedings — should the IDB's baseless allegations against Doe Corporations, and the IDB's flawed finding of sufficient evidence of wrongdoing to initiate sanctions proceedings, be publicly disclosed. *See* ECF No. 3-1, at 31–42 (Mem. in Support for Mot. for Prelim. Inj.). Doe Corporations also explained the reasons why it is exceedingly unlikely that the Sanctions Proceedings would, or could, be resolved in their favor. *Id.* at 35–38. Doe Corporations thus asserted that absent immediate relief, they are virtually certain to be subject to debilitating sanctions and the further reputational impact that would follow such a determination, from which there is no right to external review. *Id.* at 39–40.

Doe Corporations also presented evidence to show that these harms have already begun to materialize even during the pendency of the IDB's

supposedly confidential (and unadjudicated) proceedings.  Earlier this year, a government agency in a country in which Doe Corporations conduct significant business invited a subsidiary of Doe Corporation 1 to participate in a prominent regional event that the agency hosts in partnership with the IDB.  App. 23 (Compl.).  The agency abruptly barred the subsidiary from participating in the event on account of "integrity concerns" with Doe Corporations raised by the IDB.  *Id.*  The IDB's disclosure of such concerns has seriously undermined Doe Corporations' standing in a key market and at a critical time when an affiliate is negotiating additional investments within that market.  *Id.*[3]  In support of these and other assertions of irreparable harm, Doe Corporations submitted a declaration from the Group Chief Legal Officer and General Counsel of Doe Corporation 1.  *See* App. (Sealed Supp.) 47–53 (Decl. in Support of Mot. to Proceed Under Pseudonym and Mot. for Prelim. Inj.).

---

[3] Doe Corporations subsequently learned of yet another unauthorized disclosure on the part of the IDB:  the IDB remarked to one or more third parties that Doe Corporations are "guilty" based on the investigation conducted to date.  ECF No. 11, at 2 (Not. Regarding Mot. to Reconsider).

### 2. Motion to Proceed Under Pseudonym

Also on May 8, and in addition to the Complaint and Motion for a Preliminary Injunction, Doe Corporations filed a Motion to Proceed Under Pseudonym. ECF No. 2 (Mot. to Proceed Under Pseudonym). For many of the same reasons asserted in support of their request for a preliminary injunction, Doe Corporations explained that pseudonymous treatment is necessary to protect their fundamental privacy interests and to safeguard their business from reputational and financial repercussions. *See* ECF No. 2-1 (Mem. in Support of Mot. to Proceed Under Pseudonym). The declaration of the senior official at Doe Corporation 1 outlined the harms that Doe Corporations would suffer in the event that their identities were disclosed. *See* App. (Sealed Supp.) 47–53 (Decl. in Support of Mot. to Proceed Under Pseudonym and Mot. for Prelim. Inj.). At the same time, Doe Corporations emphasized that the very crux of their action, and associated request for injunctive relief, is to bar the IDB from pursuing the pending sanctions proceedings and disclosing the existence of those proceedings and the antecedent investigation, including their identities. *See* ECF No. 2-1 (Mem. in Support of Mot. to Proceed Under Pseudonym). Doe Corporations showed

that these privacy interests outweighed the modest interests of both the public and the IDB in public disclosure of Doe Corporations' identities.

The District Court denied Doe Corporations' Motion in its May 14 Order. App. 32–37 (May 14 Order). It applied the five-factor test outlined by this Court in *In re Sealed Case I*, 931 F.3d 92, and *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) ("*In re Sealed Case II*"). The District Court concluded that "[a]lthough their Motion raises close questions, Plaintiffs have, for now, not met their burden to show that their privacy interests outweigh the public's presumptive and substantial interest in learning their identities." App. 33 (May 14 Order). The court then analyzed each of the five factors—even those that categorically do not apply to non-individual plaintiffs like Doe Corporations.

The District Court first held that Doe Corporations "have provided adequate evidence to support 'their contention that public disclosure that they are subject to an ongoing [IDB] investigation would likely cause them debilitating reputational and financial hardship.'" *Id*. 34 (alteration in original) (citation omitted). Crediting the aforementioned declaration submitted by Doe Corporations, the court noted "the likelihood that [Doe Corporations] will lose business from current and potential customers." *Id*. The District

Court recited the declarant's explanation that "'Doe Corporations rely to a significant degree on their hard-earned reputation for ethical dealings and regulatory compliance when soliciting new customers, maintaining current customers, and obtaining approvals from governments and regulatory authorities typically needed to conduct their business activities.'" *Id.* 34–35. "[I]ndeed, '[e]ntities accused of or adjudicated to have engaged in corrupt conduct are often barred from or otherwise disadvantaged in participating in commercial tenders.'" *Id.* 35 (second alteration in original).

The District Court emphasized that the declarant "buttresses those assertions with specific examples of harm Doe Corporations have already suffered," including "an instance in which a government agency 'reversed course and barred [a subsidiary of Doe Corporation 1] from participating in [an] event on account of supposed "integrity concerns" that the IDB had raised about Doe Corporations.'" *Id.* The court further credited the declarant's statement that "the government of the country in which the relevant commercial project is sited is likely to terminate its agreement with Doe Corporations based on Defendant's allegations." *Id.* The District Court thus concluded that "Doe Corporations have . . . provided sufficient explanations and support to succeed under the first factor." *Id.*

The District Court likewise determined that the fifth factor "supports pseudonymity" because the IDB "would suffer no 'risk of unfairness' if the Motion were granted, as it is already aware of Plaintiffs' identities." *Id*. 36.

On the other side of the ledger, the court found that the second factor (risk of retaliatory physical or mental harm) and third factor (age of the persons whose privacy interests are at stake) cut against Doe Corporations' Motion. *Id*. 35. The District Court similarly determined that the fourth factor supports disclosure because Doe Corporations' "'arguments would clearly apply beyond [their] case.'" *Id*. 36 (alteration in original) (citation omitted).

The District Court concluded its order by counting up the score, without performing any qualitative balancing analysis: "In sum, the first and fifth factors weigh in favor of granting pseudonymity. Because the second, third, and fourth factors support disclosure, however, the Court concludes that Doe Corporations have not met 'the weighty burden' of 'demonstrating a concrete need' for pseudonymity in this lawsuit." *Id*. (citation omitted).

The May 14 Order provided Doe Corporations a fourteen-day window to file a notice of their intent to proceed publicly or otherwise face the closure of the action. *Id*. 37.

### 3. Motion to Reconsider

Doe Corporations promptly moved for reconsideration of the May 14 Order, arguing that the District Court had ignored this Court's decisions articulating the proper standard to apply to motions to proceed pseudonymously and, for the first time, addressing the second, third, and fourth factors of the five-part test in detail.  ECF No. 8 (Mot. to Reconsider); ECF No. 8-1 (Mem. in Supp. of Mot. to Reconsider).[4]

On July 30, the District Court denied Doe Corporations' Motion to Reconsider.  App. 38–44 (July 30 Order).  The court reaffirmed its conclusion that Doe Corporations had satisfied the first and fifth factors.  *Id.* 39, 42.  It defended and reaffirmed its balancing analysis, concluding that "when three factors cut decisively against pseudonymity and Plaintiffs do not make an extraordinarily strong showing on the other two, then a holistic balancing shows that Plaintiffs have not carried their burden."  *Id.* 40.  The District Court then reiterated its finding that the fourth factor favored disclosure,

---

[4]  Doe Corporations noted that their original Motion contained a request for an opportunity to address the five-factor standard should the District Court determine that the standard applied in full.  *See* ECF No. 8-1, at 2 n.1 (citing ECF No. 2-1, at 7 n.1 (Mem. in Support of Mot. to Proceed Under Pseudonym)).

determining that Doe Corporations' requested relief "'seeks to alter the operation of public law both as applied to [Doe Corporations] and, by virtue of the legal arguments presented, to other parties going forward.'" *Id*. 41–42 (citation omitted).

The July 30 Order requires Doe Corporations, within fourteen days, to notify the Clerk whether they will proceed under their real names, or else the case will be terminated. *Id*. 44. On August 4, Doe Corporations timely noticed their appeal of both Orders. ECF No. 15 (Not. of Appeal). Doe Corporations also filed a motion to stay any closure of the case pending the resolution of this appeal. ECF No. 14 (Mot. to Stay).[5]

## SUMMARY OF THE ARGUMENT

Despite concluding that Doe Corporations had established that disclosure of their identities would likely result in debilitating reputational and financial hardship, and finding no prejudice to the IDB, the District Court inexplicably denied Doe Corporations' Motion as well as their Motion to Reconsider. It did so without any qualitative balancing of the factors at play,

---

[5] Given their need for urgent relief, Doe Corporations are filing a Motion for Expedited Consideration of this Appeal contemporaneously with this brief. *See* FRAP 27, D.C. Cir. R. 27.

much less sufficient justification for issuing the first known ruling in this Circuit rejecting pseudonymity where the "preserving privacy" and "prejudice to the opposing party" factors were met. The District Court's rigid application of the guideposts regulating the pseudonymity inquiry conflicts with this Court's precedent in at least three fundamental ways.

*First*, the District Court applied the wrong criteria when assessing Doe Corporations' request to proceed under pseudonym. This Court has held that a district court must "consider[] the factors relevant to the case before it." *In re Sealed Case I*, 931 F.2d at 97. And neither the second factor (risk of retaliatory *physical* or *mental* harm) nor the third factor (age of the parties) will ever support the request of non-individuals (like Doe Corporations) to proceed under pseudonym. This is why both this Court and other district courts in this Circuit have declined to apply one or both factors to corporate plaintiffs. Nevertheless, without explanation or justification, the District Court fully applied both of these inapposite factors alongside the other three prongs of the five-part test. The District Court should have followed this Court's guidance and omitted these two factors from the analysis, balanced Doe Corporations' success on the first and fifth factors against their

supposed failure on the fourth factor, and readily concluded that the scale tipped sharply in favor of pseudonymity.

*Second*, even assuming that it considered the proper criteria, the District Court abused its discretion by engaging in the forbidden "wooden exercise of ticking the five boxes" of the five-part test, *id.* at 97, thus skipping the necessary "flexible and fact[-]driven" balancing, *In re Sealed Case II*, 971 F.3d at 326. The sum total of the District Court's weighing of the five factors, across both Orders, was the observation that three factors supported disclosure and three is greater than two. The District Court's failure on this score led it to issue the first known opinion in this Circuit rejecting pseudonymity despite the moving party's satisfaction of the first and fifth factors. Yet the District Court did not even acknowledge this watershed ruling, much less explain why the "'likely . . . debilitating reputational and financial hardship'" to Doe Corporations upon disclosure, App. 34 (May 14 Order) (citation omitted), and the lack of any prejudice to the IDB, did not outweigh the other three factors. Nor did the District Court clarify why it afforded equal and "decisive[]" weight, *id.* 40 (July 30 Order), to two factors that corporate plaintiffs like Doe Corporations definitionally cannot satisfy. A

faithful application of this Court's balancing test would have compelled granting Doe Corporations' Motion.

*Third*, even assuming that it applied the right criteria and properly balanced the five factors, the District Court also abused its discretion by misinterpreting the second and fourth factors. The District Court belatedly claimed a willingness to consider retaliatory risk "not related to physical or mental harm." *Id.* (July 30 Order). But even under that formulation of the second factor, the District Court ignored the fulsome evidence in the record of the various ways in which third parties will retaliate against Doe Corporations if their identities are disclosed—evidence that it otherwise fully credited. Similarly, the District Court adopted a capacious reading of the fourth factor, concluding that it weighed in favor of disclosure simply because Doe Corporations' legal arguments "'would clearly apply beyond [their] case,'" App. 36 (May 14 Order) (alteration in original) (citation omitted). This proves too much, of course, since it is the rare case indeed in which a party's arguments will have no bearing on any other actions. Accordingly, the District Court should have concluded that four of the five factors supported pseudonymity and resolved the balancing in favor of Doe Corporations' request.

## STANDARD OF REVIEW

This Court reviews "'de novo the criteria used by a district court to decide whether to grant a motion to proceed anonymously,'" and it reviews "the 'application of those criteria' to the facts of a particular case for an abuse of discretion.'" *Doe v. Hill*, 141 F.4th 291, 295 (D.C. Cir. 2025) (citation omitted). A District Court abuses its discretion when it "fail[s] to consider a relevant factor, . . . relie[s] on an improper factor, [or when] the reasons given [do not] reasonably support the conclusion." *In re Sealed Case I*, 931 F.3d at 96 (internal quotation marks and alterations omitted) (citing *Kickapoo Tribe of Indians of the Kickapoo Rsrv. in Kan. v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995)); *see also Chappell-Johnson v. Powell*, 440 F.3d 484, 489 (D.C. Cir. 2006) (holding that district court abused its discretion where it improperly interpreted movant's burden of proof in a "rigid, mechanized, or ritualistic way") (quotation omitted). "An error of law," moreover, "is 'by definition' an abuse of discretion." *Hill*, 141 F.4th at 295 (citation omitted). Consequently, when a factor's application turns primarily on legal rather than fact-bound judgment—such as "developing legal principles for use in future cases"— review is de novo. *Bufkin v. Collins*, 145 S. Ct. 728, 739 (2025) (citing *U.S. Bank*

*Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018)).

Separately, this Court generally reviews a district court's order denying a motion to reconsider for abuse of discretion. *See, e.g., Dyson v. Dist. of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013). Such review asks whether the court "appl[ied] the correct legal standard or misapprehended the underlying substantive law, and whether the [D]istrict [C]ourt's ruling was within the scope of permissible alternatives in light of the relevant factors and the reasons given to support it." *Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006) (citing *Kickapoo Tribe*, 43 F.3d at 1497); *Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs.*, 892 F.3d 348, 356, 358 (D.C. Cir. 2018) (reversing the District Court's denial of motion to reconsider in part "because the court's judgment was based on impermissible considerations and clearly erroneous findings of fact"). However, when a district court addresses the merits of a new legal argument raised on reconsideration, its refusal to grant reconsideration on that basis is reviewed de novo. *Dyson*, 710 F.3d at 420 (explaining that this Court reviews the rejection of a "new theory" raised in a motion to reconsider "*de novo*, just as [it] would have if Appellant had appealed the" theory in the original order) (emphasis original); *Pigford v.*

*Perdue*, 950 F.3d 886, 891 (D.C. Cir. 2020) (explaining that de novo review is appropriate when the district court "reached the merits of a new argument or legal theory" in reviewing motion for reconsideration).

**ARGUMENT**

## I. THE DISTRICT COURT APPLIED THE WRONG CRITERIA TO ADJUDICATE DOE CORPORATIONS' MOTIONS.

The District Court erred at the outset by uncritically applying each of the five guiding pseudonymity factors to both of Doe Corporations' motions. In doing so, the court ignored that these factors were developed in the context of individual plaintiffs, that a non-individual plaintiff can never satisfy two of the factors, and that this Court has instructed district courts only to apply the factors relevant to a particular case.

Generally, a complaint filed in federal court must identify the plaintiffs. *See* Fed. R. Civ. P. 10(a); *see also, e.g., Hill*, 141 F.4th at 293. "Nonetheless, federal courts may grant 'the rare dispensation of pseudonymous status' when warranted to fairly provide justice in a particular case." *Id.* (citation omitted). The touchstone inquiry "balance[s] the litigant's legitimate interest in anonymity against countervailing interests in full disclosure." *In re Sealed Case I*, 931 F.3d at 96.

This Court has identified five factors that "serve well as guideposts from which a court ought to begin its analysis":

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a manner of [a] sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly;
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.*, at 97.

These five factors are "'non-exhaustive'" and merely "guide" the court as part of a broader "'flexible and fact[-]driven' inquiry" that "ultimately depends on the totality of the circumstances of the case before it." *Hill*, 141 F.4th at 293 (citation omitted). A reviewing court must only "consider[] the factors relevant to the case before it" and is free to jettison an "enumerated factor[]" in appropriate circumstances. *See In re Sealed Case I*, 931 F.3d at 97. Indeed, the Court's bifurcated standard of review of rulings on motions to

proceed pseudonymously—in which the **criteria** a District Court employs to adjudicate are subject to de novo review—confirms that not all factors are appropriately applied in a given case. *See Hill*, 141 F.4th at 295.

The second and third factors are not "relevant to the case" and should not be applied where, as here, a non-individual requests pseudonymity. *See In re Sealed Case I*, 931 F.3d at 97. Those factors turn on the risk of "retaliatory physical or mental harm" to the plaintiff and the "ages of the persons whose privacy interests are sought to be protected," respectively. *Id.; accord Hill*, 141 F.4th at 293 (describing factors as considering "the risk of retaliation against a named plaintiff" and "the sensitivity of the party's age"). Because a corporate plaintiff is not capable of suffering "physical or mental harm," and does not have an "age," it will always flunk these prongs of the five-part test. So these factors necessarily have no utility in "gaug[ing] the competing public and private interests at stake in the litigation and guid[ing] the court's determination of whether the presumption against pseudonymity has been overcome." *Hill*, 141 F.4th at 293. They will always point in the same direction when a non-individual requests pseudonymity, and their consideration in such circumstances clashes with this Court's mandate that district courts conduct a "'flexible and fact[-]driven' inquiry" that "depends on the totality

of the circumstances of the case before it," *id.* (citation omitted), and refrain from "engag[ing] in a wooden exercise of ticking the five boxes," *In re Sealed Case I*, 931 F.3d at 97.

For precisely these reasons, both this Court and district courts within the Circuit have declined to invoke the second and third factors when considering corporations' requests to proceed under pseudonym. *See, e.g.*, *In re Sealed Case II*, 971 F.3d at 326–29; *John Doe Co. v. CFPB*, 321 F.R.D. 31, 33–34 (D.D.C. 2017); *John Doe Co. No. 1 v. CFPB*, 195 F. Supp. 3d 9, 16–17 (D.D.C. 2016). In *John Doe Co. No. 1*, for instance, the court noted that the second and third factors "are a poor fit for a case in which the movant is a business . . . that seeks to avoid grave reputational and financial injury." 195 F. Supp. 3d at 16. Eschewing a "rigid, multi-part test," the court instead "assess[ed] . . . whether the non-speculative privacy interests that the movants have identified outweigh the public's substantial interest in knowing the identities of parties in litigation, along with any legitimate interest that the non-moving parties' interest may have in revealing the identity of the movants." *Id.*, at 17. The court ultimately held that "pseudonymous treatment represents a fair compromise" because "[t]he public knows much about this litigation,

while substantial harm to Plaintiffs is avoided by protecting their identities." *Id.*, at 24.

Drawing on this decision, the court in *John Doe Co.* explained that "the 'risk of retaliatory physical or mental harm' to the movant or a third party, or the age of the movant, are inapplicable in a case concerning a business, as opposed to a natural person." 321 F.R.D. at 34 (citation omitted). The court applied the overarching balancing test and concluded that, "weighed against the minimal apparent interest in disclosure, the plaintiff's significant interest in maintaining its anonymity at this early stage in the litigation is more than sufficient to overcome any general presumption in favor of open proceedings." *Id.* at 35.

This Court, too, has recognized that the second and third factors are largely irrelevant in cases involving a business plaintiff. When evaluating a corporation's request for pseudonymity in *In re Sealed Case II*, the Court declined to consider the second and third factors, instead focusing on the prongs that apply to all plaintiffs to determine that pseudonymity was unwarranted in the specific case before it. *See* 971 F.3d at 326–29.

Against this backdrop, the District Court erred by fully applying the second and third factors to Doe Corporations' request to proceed

pseudonymously. It did not so much as acknowledge Doe Corporations' argument that neither of those factors applies to a corporate plaintiff, *see* ECF No. 2-1, at 7 (Mem. in Support of Mot. to Proceed Under Pseudonym); ECF No. 8-1, at 4–5 (Mem. in Support of Mot. to Reconsider), instead barreling forward and impermissibly "ticking the five boxes" without examination. *See In re Sealed Case I*, 931 F.3d at 97. Nor did the District Court try to square its analysis with the contrary rulings in *John Doe Co. No. 1* and *John Doe Co.* The District Court ignored this Court's admonition to "consider[]" only "the factors relevant to the case before it," *In re Sealed Case I*, 931 F.3d at 97, and to focus on the "totality of the circumstances" of that specific case, *Hill*, 141 F.4th at 293. Likewise, the District Court disregarded this Court's focus on the first and fourth factors in *In re Sealed Case II* and created unnecessary and unjustified conflict with decisions by two other District Judges—all without any explanation for its departure.

Had the District Court properly discarded the second and third factors, its rulings would have been straightforward. It would have been left to balance the "likely . . . debilitating reputational and financial hardship" to Doe Corporations upon disclosure of their identities and the resulting lack of any "unfairness" to the IDB, which favored pseudonymity, against the

presence of legal arguments that would apply "to other parties going forward," which counseled in favor of disclosure according to the District Court. App. 34–36 (May 14 Order) (quotations omitted). Plainly, that analysis overwhelmingly tips in the direction of pseudonymity, as other courts have concluded. *See, e.g.*, *John Doe Co.*, 321 F.R.D. at 34–35 (permitting pseudonymous treatment when plaintiff challenging constitutionality of CFPB's structure established "reputational damages" that would result if its involvement in "ongoing and related administrative proceedings" were made public); *John Doe Co. No. 1*, 195 F. Supp. 3d at 21, 24 (allowing plaintiffs raising claim under the Administrative Procedure Act concerning the attorney-client privilege to proceed under pseudonym based on evidence that disclosure of their identities "would likely cause them debilitating reputational and financial hardship").

## II. THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO PROPERLY BALANCE THE FIVE FACTORS INCLUDED IN THE GOVERNING STANDARD.

Even assuming that the District Court considered the proper criteria in this case, its wholesale failure to qualitatively balance those factors constitutes an abuse of discretion and compels reversal of both Orders. The District Court mechanically lent equal weight to each of the five factors,

reaching its rulings by simply adding up the score (three points in favor of disclosure against two points in favor of pseudonymity). The result of this analysis, which conflicts with this Court's clear precedent, is a ruling that constitutes an extreme and unjustified outlier and establishes a new framework that all but eliminates the ability of non-individual plaintiffs to challenge official conduct pseudonymously.

### A. The District Court's Rulings Are Unjustified and Extreme Outliers.

The District Court concluded and reaffirmed that Doe Corporations satisfied the first and fifth factors of the governing standard. Disclosure of Doe Corporations' identities "'would likely cause them debilitating reputational and financial hardship.'" App. 34 (May 14 Order) (citation omitted). And the IDB "would suffer no 'risk of unfairness' if the Motion were granted." *Id.* 36; *see also id.* 42 (July 30 Order) ("[F]ully acknowledg[ing] that Plaintiffs possess a substantial privacy interest in this case and little risk of prejudice to IDB from pseudonymity."). Courts in this Circuit have granted requests for pseudonymous treatment on similar (or lesser) showings, without more. *See, e.g.*, *John Doe Co.*, 321 F.R.D. at 35; *John Doe Co. No. 1*, 195 F.

Supp. 3d at 24; *see also Brown Rudnick LLP v. Doe*, No. CV 25-853 (JEB), 2025 WL 1287046, at *3-4 (D.D.C. Apr. 9, 2025).

The District Court, in sharp contrast, denied Doe Corporations' Motion and refused to reconsider that denial. It became the first in this Circuit—across more than 230 known cases—to reject a request to proceed pseudonymously despite determining that the plaintiff satisfied the first and fifth factors of the operative test. That alone raises profound questions about the District Court's exercise of its discretion, as does its silence on such a sharp break from an unbroken line of rulings. The District Court's failure to acknowledge, much less explain, its outlier ruling in either Order is the definition of an abuse of discretion. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (observing that a discretionary decision made by a district court "without any justifying reason . . . is not an exercise of discretion" but "merely abuse of that discretion"); *cf. United States v. Edmond*, 924 F.2d 261, 267–68 (D.C. Cir. 1991) ("One of the basic duties of an appellate court is to signify when it is departing from precedent and to provide a legal analysis explaining why it is changing course.").

## B. The District Court Improperly Gave Equal Weight to Each Factor.

The District Court's silent departure from other rulings in this Circuit is reason alone to reverse the Orders for abuse of discretion. But the flaws in the District Court's application of the five-factor test run deeper still. Its perfunctory conferral of equal weight to each factor—even those that can never apply to corporate plaintiffs—runs headlong into this Court's established precedent.

The touchstone of the pseudonymity inquiry is the "balance" between "the litigant's legitimate interest in anonymity against countervailing interests in full disclosure." *In re Sealed Case I*, 931 F.3d at 96. While the five factors "serve well as guideposts," the analysis nevertheless continues to turn on whether the "balance is appropriately struck." *Id.*, at 97. And the five factors are only a "starting point" when conducting the more fulsome balancing analysis. *In re Sealed Case II*, 971 F.3d at 326; *accord In re Sealed Case I*, 931 F.3d at 97 (explaining that a court "ought to *begin* its analysis" with consideration of the five factors (emphasis added)).

This Court has cautioned that its "singling out" of the five factors "should not lead a trial court to engage in a wooden exercise of ticking the

five boxes." *In re Sealed Case I*, 931 F.3d at 97. Instead, the "balancing test is necessarily flexible and fact driven." *In re Sealed Case II*, 971 F.3d at 326. A court must pay heed to the "totality of the circumstances of the case before it," *Hill*, 141 F.4th at 293, and focus only on those "factors relevant to the case before it," *In re Sealed Case I*, 931 F.3d at 97.

In defiance of this clear precedent, the District Court "engage[d]" in the forbidden "wooden exercise of ticking the five boxes" in both of its Orders. *See id.* The District Court walked through each of the five factors, concluding that two supported Doe Corporations' request for pseudonymity while three favored disclosure. But it stopped there. In both Orders, the District Court forwent any comparison of the factors in favor of the rote conclusion that Doe Corporations' motion must be denied because more factors favor disclosure. App. 36 (May 14 Order) (noting that "the first and fifth factors weigh in favor of granting pseudonymity" but denying Motion "[b]ecause the second, third, and fourth factors support disclosure," without further explanation); *id.* 40 (July 30 Order) (denying Motion to Reconsider because "three factors cut decisively against pseudonymity and Plaintiffs do not make an extraordinarily strong showing on the other two"). In the

District Court's view, such scorekeeping amounts to "holistic balancing." *Id.*
40 (July 30 Order).

But the District Court in fact engaged in no "balanc[ing]" of Doe Corporations' "legitimate interest in anonymity against countervailing interests in full disclosure," *In re Sealed Case I*, 931 F.3d at 96. Nor did it account for the "totality of the circumstances of the case before it," *Hill*, 141 F.4th at 293, decide which factors were more or less relevant, *In re Sealed Case I*, 931 F.3d at 97, or conduct any kind of "flexible and fact[-]driven" assessment, *In re Sealed Case II*, 971 F.3d at 326. Far from serving as a mere "starting point," *id.*, or "gauge," *Hill*, 141 F.4th at 293, the five factors improperly made up the beginning and end of the District Court's analysis.

The District Court's failure to weigh the factors is all the more problematic given Doe Corporations' status as non-individual plaintiffs. As explained above, *see supra* pp. 30–33, two of the five factors will always favor disclosure in cases with non-individual plaintiffs. Even assuming that courts still should consider those factors with corporate plaintiffs, surely those factors should not be given the same weight as the other three factors that actually inform the analysis. Yet that is precisely what the District Court did here. Although its order denying reconsideration disclaimed any such

approach, the District Court in fact concluded that "when three factors cut decisively against pseudonymity and Plaintiffs do not make an extraordinarily strong showing on the other two, then a holistic balancing shows that Plaintiffs have not carried their burden." App. 40 (July 30 Order). This statement at once improperly treats each factor the same, gives "decisive[]" weight to two factors that by definition cannot apply in the "case before it," *Hill*, 141 F.4th at 293, and replaces this Court's qualitative balancing test with a math exercise (where only "extraordinary[]" circumstances justify a departure from a pure quantitative tallying of factors).[6]

Contrary to the District Court's findings, it is the rare (indeed, apparently nonexistent) case in which a plaintiff will satisfy the first and fifth factors yet be forced to disclose its identity to proceed with litigation. *See supra* pp. 35–36. Courts in those circumstances have definitively resolved

---

[6] Even the District Court's allowance that "an extraordinarily strong showing" on two factors could outweigh adverse findings on the others appears illusory. App. 40 (July 30 Order). As noted, the District Court concluded that Doe Corporations established that they would "likely" face "'debilitating reputational and financial hardship'" upon disclosure, and that the IDB "would suffer no 'risk of unfairness' if the Motion were granted." *Id.* 34, 36 (May 14 Order) (citation omitted). It is hard, if not impossible, to fathom a stronger showing on those two factors, at least for a non-individual plaintiff.

the balancing analysis in favor of pseudonymity—even where the showing on the first factor focused on "'reputational and financial losses,'" App. 42 (July 30 Order) (citation omitted); *see supra* pp. 35–36.  The District Court abused its discretion by failing to do the same here, particularly when two of the five factors do not apply to businesses and have otherwise been ignored by other courts in such circumstances.  *See Chappell-Johnson*, 440 F.3d at 489 (reversing order denying reconsideration where district court's interpretation of standard was "rigid, mechanized, or ritualistic") (citation omitted); *Fraenkel*, 892 F.3d at 356 ("'A district court would necessarily abuse its discretion if it based its ruling on' . . . an improper weighing of the factors limiting its discretion." (citation omitted)).

### C.    The District Court's Rulings Have Far-Reaching Consequences.

If allowed to stand, the shadow cast by the District Court's rulings will stretch far beyond this case.  The District Court's reasoning all but eliminates the ability of non-individual plaintiffs to challenge official action pseudonymously, without fear of reprisal, retaliation, or reputational ruin.

Under the District Court's reasoning, each of the five factors carries equal weight in a case involving a non-individual plaintiff seeking to

proceed pseudonymously. The second and third factors, however, will never support disclosure. *See supra* pp. 30–33. Accordingly, even if a non-individual plaintiff can (as here) satisfy the first and fifth factors (interest of the plaintiff in nondisclosure and unfairness to the opposing party), the fourth factor (which measures "the extent of the public interest in transparent litigation" based on "[t]he nature of the claim," *Hill*, 141 F.4th at 298) becomes dispositive. That alone is enough to revive concerns about "chill[ing] litigants from suing the government." *See id.*, at 300 (explaining that the fourth factor's status as "just one of five non-exclusive considerations for courts to weigh" mitigates the risk that application of that factor could deter claims against the government).

The District Court interpreted the fourth factor as militating against pseudonymity when a lawsuit "against a government defendant" (or "quasi-government[]" defendant) presents "'arguments [that] would clearly apply beyond [the plaintiffs'] case.'" App. 36 (May 14 Order) (citation omitted); *see also id.* 43 (July 30 Order) (distinguishing Doe Corporations' claims "from cases where the relief is focused on the individual but may incidentally touch on broader issues"). Under the District Court's logic, then, a non-individual plaintiff bringing claims against an official actor may never

proceed pseudonymously if its legal arguments would "'apply beyond [that plaintiff's] case.'" *Id.* 36 (May 14 Order) (citation omitted).

Of course, it is difficult to conjure a case in which no argument could "apply beyond" that single action. This case proves the point. Doe Corporations request individualized relief and challenge the authority of the IDB — which, to be clear, is an international organization and not a U.S. government actor — to conduct ostensibly confidential enforcement proceedings against them. If Doe Corporations' dispute concerning the IDB's arcane sanctions proceedings flowing from a series of private contractual agreements qualifies as a request to "'alter the operation of public law . . . to other parties going forward'" and for "programmatic relief," App. 41, 43 (July 30 Order) (citation omitted), a court would be hard-pressed to find a claim against an official actor that satisfies the fourth factor.[7]

In any event, courts have permitted plaintiffs to proceed pseudonymously in suits against official actors even when their claims swept far

---

[7] The District Court's expansive application of the fourth factor to deny relief is especially unjust here, where the IDB's underlying allegations involve pre-loan conduct that Doe Corporations proactively disclosed and the IDB's affiliate vetted with outside counsel before any funds were disbursed; and where the IDB nonetheless proceeded with the loans and only later initiated sanctions proceedings. *See* App. 10–11 (Compl.).

beyond their individual cases. *See, e.g.*, *John Doe Co.*, 321 F.R.D. at 32 (challenge to the constitutionality of the CFPB's structure, among other things); *John Doe Co. No. 1*, 195 F. Supp. 3d at 21, 24 (claim under the Administrative Procedure Act concerning the attorney-client privilege); *John Doe Corp. v. Pub. Co. Acct. Oversight Bd.*, No. H-24-1103, 2024 WL 5275034 (S.D. Tex. June 10, 2024) (constitutional challenges involving the Public Company Accounting Oversight Board). Yet the District Court would have squelched these claims at their inception for raising generally applicable questions.

The District Court's rulings thus present non-individual plaintiffs seeking to sue official actors pseudonymously with an impossible choice: challenge the lawfulness of official action and face "'debilitating reputational and financial hardship,'" App. 34 (May 14 Order) (citation omitted), or preserve their reputation and finances while sacrificing their ability to hold official actors to account. Relieving would-be plaintiffs of this conundrum is precisely why courts have granted pseudonymity in these circumstances to "avoid[] the risk that the threat of public disclosure of an ongoing [government] investigation will unduly chill the subjects of investigations from seeking relief or that disclosure may be used—or perceived to be used—punitively against those who challenge the [government's] authority." *John Doe*

*Co. No. 1*, 195 F. Supp. 3d at 24; *see also*, *e.g.*, *John Doe Corp.*, 2024 WL 5275034, at *3 (resolving balance in favor of pseudonymity where, among other things, "disclosure of the name of John Doe Corporation, or any party suing the PCAOB, would chill suits about the PCAOB's actions").

In service of the public benefit of knowing the identities of litigants, the District Court's Orders discounted the public good of judicial oversight of official action. The resulting chill in efforts to prevent official actors from exceeding their legal authority surely will cause far graver injury to the public than permitting plaintiffs like Doe Corporations to litigate their claims under a pseudonym. The Court should reverse the District Court's judgment to stop the proliferation of these sweeping harms.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION IN MISAPPLYING THE SECOND AND FOURTH FACTORS.

Even assuming that the District Court applied the right criteria and properly conducted a quantitative comparison of the five factors (it did not), it still abused its discretion by misapplying the second and fourth factors in its Orders. Taking the District Court's broader interpretation of the second factor (the risk of retaliation against a named plaintiff) at face value, that factor supports pseudonymity here because Doe Corporations have provided

ample evidence of retaliatory harm upon disclosure of their identities. Likewise, the fourth factor (the identity of the opposing party) weighs in favor of pseudonymity. Four of the five factors thus favor pseudonymity, and no form of balancing could have elevated the remaining factor (age of the parties) to such overwhelming importance to support the denial of Doe Corporations' Motion and subsequent Motion to Reconsider.

### A. The District Court Abused Its Discretion in Concluding that the Second Factor Supports Disclosure of Doe Corporations' Identities.

The second factor asks "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties." *In re Sealed Case I*, 931 F.3d at 97; *accord Hill*, 141 F.4th at 293 (describing factor as considering "the risk of retaliation against a named plaintiff"). As explained above, *see supra* pp. 30–32, non-individual plaintiffs categorically cannot satisfy this factor because they are not capable of suffering "physical or mental" harm. The District Court, however, expressed a willingness in the July 30 Order to "consider <u>any</u> allegations that Plaintiffs are at risk of retaliation from IDB if their identities are disclosed, even if such risks are not related to physical or mental harm." App. 40 (July

30 Order) (emphasis original). But the District Court apparently concluded that Doe Corporations still had not met that standard.[8]

Even taking the District Court's ex post broadening of the second factor at face value, its determination on this score is downright puzzling. Elsewhere in its Orders, the District Court credited Doe Corporations' evidence of "'debilitating reputational and financial hardship'" upon disclosure of their identities. *Id.* 34 (May 14 Order) (citation omitted). That evidence included retaliation by "current and potential customers", *id.*, along with multiple government agencies. *Id.* 35. As the District Court explained, those third parties "likely" would respond to public disclosure of Doe Corporations' involvement in an IDB investigation by taking adverse action against them—or, in other words, retaliating. *Id.* 34.[9]

---

[8]  Although the District Court mentioned retaliation by the IDB in particular, this Court has applied the factor to encompass retaliation by persons not named as opposing parties. *See, e.g.*, *In re Sealed Case I*, 931 F.3d at 97; *Hill*, 141 F.4th at 293.

[9]  As previously noted, moreover, Doe Corporations have already experienced tangible backlash from the IDB's unauthorized disclosure of their identities: a foreign government agency initially invited a Doe Corporation 1 affiliate to participate in a major regional event but later rescinded the invitation citing "integrity concerns" relayed by the IDB. *See* App. 23 (Compl.).

Under the District Court's own reasoning, Doe Corporations thus satisfied the second factor. *See, e.g.*, *Doe v. Collins*, No. 1:25-cv-00760-RC, ECF No. 4, at 4 (D.D.C. Apr. 9, 2025) (finding second factor satisfied based on evidence of retaliation "by other employees, other federal agencies, and the public" on account of, among other things, the "stigma[]" associated with public disclosure of their claims and allegations) (citation omitted).[10] The court's internally contradictory conclusion otherwise constituted an abuse of discretion.

**B.    The District Court Abused Its Discretion in Concluding that the Fourth Factor Supports Disclosure of Doe Corporations' Identities.**

Finally, the fourth factor considers "whether the action is against a governmental or private party." *In re Sealed Case I*, 931 F.3d at 97. This Court has since clarified that "factor four is not a binary factor that always tips one way or the other based on the identity of the non-moving party." *Hill*, 141 F.4th at 298. "Rather, depending on the nature of the claims raised and relief sought, the identity of a party can materially change the public interest in open and evenhandedly transparent litigation." *Id.*, at 298–99. Where, as

---

[10]  Consistent with Circuit Rule 32.1(b)(3), Doe Corporations have appended this opinion at Addendum B.

here, a government (or quasi-government) entity is the opposing party, this factor can favor pseudonymity in light of the "lack of reputational reciprocity" that results because the "government's reputation is unaffected by litigation." *Id.*, at 298; *see also* App. 36 (May 14 Order) (citing *J.W. v. Dist. of Columbia*, 318 F.R.D. 196, 201 (D.D.C. 2016) ("Courts have concluded that anonymous litigation is more acceptable when the defendant is a governmental body because government defendants 'do not share the concerns about "reputation" that private individuals have when they are publicly charged with wrongdoing.'" (citation omitted))).

According to the District Court, the fourth factor favored disclosure because Doe Corporations' "challenge is not grounded in their specific circumstances or limited to individualized relief" and "their 'arguments would clearly apply beyond [their] case.'" App. 36 (May 14 Order) (citation omitted). In the July 30 Order, the District Court determined that this factor "hinges on 'the nature of the relief sought.'" *Id.* 41 (July 30 Order) (citation omitted). It then concluded that Doe Corporations' request for a "declaration that 'the IDB lacks the authority to initiate sanctions proceedings against Doe Corporations . . . based on alleged actions that occurred exclusively before the start of the parties' contractual relationship" required the court to

"directly resolve wide-reaching questions about the IDB's enforcement authority." *Id*. 41, 43 (alteration in original) (citation omitted). The District Court's analysis conflicts with this Court's ruling in *Hill* and the rulings of other district judges in at least three ways.

**First**, the District Court improperly discounted that Doe Corporations seek individualized relief in this case. Indeed, Doe Corporations' suit relies on a series of private contractual agreements and seeks to enjoin only the IDB's unlawful enforcement proceedings against **them**, as well as associated declaratory and monetary relief. The District Court disputed this straightforward point by reciting Doe Corporations' request for "a declaration that the 'IDB lacks the authority to initiate sanctions proceedings *against Doe Corporations*." *Id*. 41 (July 30 Order) (emphasis added) (citation omitted). But this proves the point. Doe Corporations' action is limited to halting a single IDB enforcement proceeding against them arising from the parties' commercial dealings. Its claims are far removed from a facial constitutional challenge designed to "invalidate laws across the board no matter to whom they are applied" or an "action[] seeking broad or structural relief against private businesses." *See Hill*, 141 F.4th at 298–99. By the District Court's own terms, the nature of the relief sought by Doe Corporations points sharply in

favor of pseudonymity. *See* App. 41 (July 30 Order) ("'When a plaintiff requests individualized relief against a government defendant,' then the factor favors pseudonymity.") (citation omitted); *see also id*. 36 (May 14 Order).

**Second**, the District Court declined to analyze whether resolution of Doe Corporations' claims depends on their identities. To be sure, the "'general public'" indisputably has an "'interest in the openness of governmental processes.'" *In re Sealed Case I*, 931 F.3d at 96 (citation omitted). But a court still must consider whether "individualized factors and information about [the plaintiff's circumstances]" are bound up with the plaintiff's claims. *See Hill*, 141 F.4th at 299. And unlike *Hill*, where "information about the plaintiff's identity and his trustworthiness notwithstanding his felony convictions sits at the heart of [the plaintiff's] as-applied constitutional challenge," *id.*, Doe Corporations' claims do not turn at all on their identities. Rather, Doe Corporations ask the court to resolve questions of law—including those concerning the IDB's immunity and compliance with contractual duties—on an undisputed factual record. The public interest in a plaintiff's identity is lessened in these circumstances. *See, e.g.*, *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 372 (S.D.N.Y. 2019) (finding public's interest in plaintiff's identity is particularly "weak" in cases presenting "purely . . . questions of law"); *accord In re*

*Grand Jury Subpoena No. 11116275*, No. 11-527 (RCL), 2012 WL 692866, at *1 (D.D.C. Feb. 23, 2012) (using pseudonym to refer to owner of a Twitter account that was the subject of a challenged grand jury subpoena because "[t]he public interest in the order's legal analysis does not extend as strongly to details regarding the specific Twitter account at issue").

What is more, apart from anonymization, Doe Corporations filed their Complaint and Motion for a Preliminary Injunction on the public docket without redaction, providing the public with full visibility into their arguments and the merits of their claims. "The public" thus "knows much about this litigation," *John Doe Co. No. 1*, 195 F. Supp. 3d at 24, and the "particular identities of the plaintiffs . . . [have] 'little bearing on the nature of the dispute or the merits of the case,' and . . . is 'largely irrelevant to the public concern with the nature of the process.'" *R.F.M.*, 365 F. Supp. 3d at 372 (citation omitted).

*Third*, the District Court mischaracterized the "nature" of Doe Corporations' claims as seeking "programmatic relief" that would "alter the operation of public law . . . to other parties going forward." App. 41, 43 (July 30 Order) (citation omitted). Nowhere did the District Court acknowledge that Doe Corporations' claims—for breach of contract, for breach of the

implied covenant of good faith and fair dealing, and for a declaratory judgment—arise exclusively out of their private contractual agreements with the IDB. That resolution of Doe Corporations' contractual claims might require consideration of the IDB's charter does not turn this into a case seeking "programmatic relief." *Id*. at 43. Instead, Doe Corporations' claims are far closer to those "where the relief is focused on the individual but may incidentally touch on broader issues," *id.*, and that favor pseudonymity under the District Court's reasoning.

In any event, the District Court's expansive interpretation of the types of claims that "seek[] to alter the operation of public law" and request "programmatic relief" conflict with this Court's decision in *Hill*. *Id*. 41, 43 (citation omitted). There, the plaintiff's request to "invalidate as facially unconstitutional a provision of federal law" sought "the 'gravest' ruling a court can issue." 141 F.4th at 299 (citation omitted). This is because such "facial challenges 'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.'" *Id.* (citation omitted). Accordingly, "[g]iven the far-reaching consequences of the relief" sought, the Court found

that "the public interest in understanding the genesis and generator of the litigation is great." *Id.*

Despite the District Court's similar labeling of Doe Corporations' claims as posing "wide-reaching questions," App. 43, this action is light years from *Hill*. As explained, Doe Corporations' claims arise exclusively from their individual private contracts with the IDB, even if they might also implicate a review of the IDB's governing charter and internal enforcement proceedings. And, suffice it to say, assessing the limitations of the enforcement authority of the IDB—an international organization outside the purview of the U.S. government and one that is not accountable to the U.S. public—does not require upending the "democratic process" or frustrating the "will of the people." *See Hill*, 141 F.4th at 299. If Doe Corporations' private contractual lawsuit is sufficiently "wide-reaching" to flunk factor four, it is difficult to conceive of any suit against a government or quasi-government actor that could satisfy the factor. And this is doubly so based on the District Court's analysis in the May 14 Order, pursuant to which the factor favors disclosure any time that the "'arguments'" in a case "'would clearly apply beyond [that] case.'" App. 36 (May 14 Order) (citation omitted).

For all these reasons, the District Court's conclusion that Doe Corporations failed to satisfy the fourth factor—and that three factors weighed against pseudonymity—was an abuse of discretion.[11]

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's Orders and remand with instructions to grant Doe Corporations' request to proceed under pseudonym.

---

[11] To the extent that the Court considers the July 30 Order, it should review that order de novo. Because Doe Corporations' original motion took the position that inapposite prongs of the five-factor test should not apply to Doe Corporations as non-individual plaintiffs, their Motion to Reconsider was the first filing in which they addressed each of the factors, and their interplay, in detail. The District Court considered those arguments on their merits in the July 30 Order, triggering de novo review on appeal. *See, e.g., Dyson*, 710 F.3d at 420 (reviewing reconsideration order de novo where the district court "consider[ed] the merits of . . . [a] new theory"); *Pigford*, 950 F.3d at 819 (explaining that de novo review of a reconsideration order is appropriate when the district court "reache[s] the merits of a new argument or legal theory").

In any event, the Court should reverse the July 30 Order under any standard of review because Doe Corporations have established "clear errors of law which compel[led] the [District Court] to change its prior position," *TIG Ins. Co. v. Republic of Argentina*, 110 F.4th 221, 240 (D.C. Cir. 2024) (quoting *Nat'l Ctr. for Mfg. Scis. v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000)), and that the District Court abused its discretion in finding no "need to correct a clear error or prevent manifest injustice," *Dyson*, 710 F.3d at 420.

Dated: August 25, 2025

Respectfully submitted,

/s/ Margaret E. Krawiec

Margaret E. Krawiec
Michael A. McIntosh
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
margaret.krawiec@skadden.com

*Counsel for Plaintiffs-Appellants Doe Corporation 1, Doe Corporation 2, Doe Corporation 3, and Doe Corporation 4*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, as calculated by Microsoft Word, it contains 11,403 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1). I also certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: August 25, 2025

Respectfully submitted,

*/s/ Margaret E. Krawiec*
Margaret E. Krawiec
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
margaret.krawiec@skadden.com

*Counsel for Plaintiffs-Appellants Doe Corporation 1, Doe Corporation 2, Doe Corporation 3, and Doe Corporation 4*

# ADDENDUM A – PERTINENT STATUTES AND REGULATIONS

**22 U.S.C. § 283f**

## § 283f. Jurisdiction and venue of actions

For the purpose of any action which may be brought within the United States, its Territories or possessions, or the Commonwealth of Puerto Rico by or against the Bank in accordance with the agreement, the Bank shall be deemed to be an inhabitant of the Federal judicial district in which its principal office in the United States is located, and any such action at law or in equity to which the Bank shall be a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of any such action. When the Bank is a defendant in any such action, it may, at any time before the trial thereof, remove such action from a State court into the district court of the United States for the proper district by following the procedure for removal of causes otherwise provided by law.

# ADDENDUM B –
# ADDITIONAL AUTHORITIES
# PER D.C. CIRCUIT RULE 32.1(b)(3)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**JANE DOES 1–6**

**and**

**JOHN DOES 7–12,**

      **Plaintiffs,**

           **v.**

**DOUGLAS A. COLLINS,**

      **Defendant.**

                           **Civil Action No. 25-760 (JEB)**

<u>**MEMORANDUM OPINION AND ORDER**</u>

At the end of this past January, the Acting Secretary of Veterans Affairs sent an agency-wide email with the VA's plans to close all diversity, equity, inclusion, and accessibility (DEIA) offices, in compliance with recent executive orders and guidance from the Office of Personnel Management.  <u>See</u> ECF No. 1 (Compl.), ¶ 12.  That same day, the VA's Office of Equity Assurance (OEA) was closed and OEA employees were placed on administrative leave.  <u>See</u> <u>id.</u>, ¶¶ 13–14.  Plaintiffs are twelve OEA employees who have brought this action against VA Secretary Douglas Collins, challenging his designation of the OEA as a DEIA office.  They allege that Defendant's erroneous designation was based on "improper" and "retaliatory purposes," evidenced by OPM's decision to terminate them instead of permitting their reassignment within the agency.  <u>See</u> <u>id.</u>, ¶ 34.  Plaintiffs allege violations of their First and Fifth Amendment rights and the Administrative Procedure Act.  <u>See</u> <u>id.</u> at 19.  Citing fears of retaliation and risks to future employment, Plaintiffs seek to proceed under pseudonyms, including concealing their identities from Defendant.  <u>See</u> ECF No. 2 (Mot.).  The Court will

grant the Motion in part and deny it in part, subject to any further consideration by the United

States District Judge to whom this case is randomly assigned.  See LCvR 40.7(f) (providing that

Chief Judge shall "hear and determine . . . motion[s] to file a pseudonymous complaint"); id.

5.1(h)(1) ("Absent statutory authority, no case or document may be sealed without an order from

the Court.").

## I.    Legal Standard

Generally, a complaint must identify the plaintiffs.  See Fed. R. Civ. P. 10(a); LCvR

5.1(c)(1).  This identification requirement reflects the "presumption in favor of disclosure [of

litigants' identities], which stems from the 'general public interest in the openness of

governmental processes,' and, more specifically, from the tradition of open judicial

proceedings." In re Sealed Case, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting Wash. Legal Found.

v. U.S. Sent'g Comm'n, 89 F.3d 897, 899 (D.C. Cir. 1996)).  A party moving to proceed

pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such

secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its

own name." In re Sealed Case, 971 F.3d 324, 326 (D.C. Cir. 2020).  As a result, the court must

"'balance the litigant's legitimate interest in anonymity against countervailing interests in full

disclosure'" by applying a "flexible and fact driven" balancing test.  Id. (quoting In re Sealed

Case, 931 F.3d at 96).  That test assesses "five non-exhaustive factors":

> [1] whether the justification asserted by the requesting party is merely to avoid the
> annoyance and criticism that may attend any litigation or is to preserve privacy in a
> matter of [a] sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the
> requesting party or[,] even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,

[5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Id. at 326–27 (quoting In re Sealed Case, 931 F.3d at 97) (first alteration in original).

## II.    Analysis

At this early stage, Plaintiffs have met their burden to show that the privacy interests at stake outweigh the public's presumptive and substantial interest in learning their identities, but not Defendant's interest in the same.

The first factor supports granting the Motion.  Plaintiffs seek pseudonymity not "merely to avoid the annoyance and criticism that may attend any litigation," but to "preserve privacy in a matter of [a] sensitive and highly personal nature."  Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97) (alteration in original).  They request that their identities be withheld "to avoid retaliation in the form of adverse employment actions, up to and including termination."  Mot. at 5.  This Court has recognized that the first factor "weighs heavily in favor of allowing [a plaintiff] to proceed pseudonymously when a complaint would identify the plaintiff in a manner that would threaten the plaintiff's future employment opportunities."  Does 1–2 v. Off. of Pers. Mgmt., 2025 WL 384577, at *2 (D.D.C. Feb. 4, 2025) (alteration in original) (quotation marks omitted) (quoting Doe v. Lieberman, 2020 WL 13260569, at *3 (D.D.C. Aug. 5, 2020) ("[T]he purpose of plaintiff's action is to prevent word of the charge of professional misconduct from reaching the National Practitioner Data Bank . . . . [I]f an adverse report is made to that body, . . . [plaintiff] will be unable to practice medicine.")).

Plaintiffs support their fear of retaliation with evidence — namely, a sworn declaration from their counsel — explaining the potential professional consequences of revealing their identities.  See ECF No. 2-1 (Decl. of David A. Branch).  For example, their attorney notes that "[t]he new Administration has strongly stated to public and private employers that they should

dismantle all DEIA offices." Id., ¶ 4. Plaintiffs have all "been notified that they will be terminated within 60 days" and "are currently looking for employment." Id. They contend that they "must report on [job] applications that they were terminated because the Defendant concluded that they worked in DEIA offices." Id. They are therefore concerned that disclosing their names in a lawsuit "challenging the Agency's designation of them as DEIA employees will destroy future efforts to gain employment." Id. Their allegations are thus not the kind of "'speculative and unsubstantiated claims of harm to a [plaintiff's] reputational or economic interests' [that] are insufficient to justify proceeding anonymously." John Doe Co. No. 1 v. Consumer Fin. Prot. Bureau, 195 F. Supp. 3d 9, 22 (D.D.C. 2016) (quoting Doe v. Pub. Citizen, 749 F.3d 246, 274 (4th Cir. 2014)).

The second factor also supports granting the Motion. This factor favors pseudonymity where a party faces "risk of retaliatory physical or mental harm." In re Sealed Case, 971 F.3d at 326 (quotation marks omitted); see also Does 1–9 v. U.S. Dep't of Just., 2025 WL 446030, at *2 (D.D.C. Feb. 4, 2025) (second factor favors pseudonymity when disclosure puts plaintiffs at risk of threats and harassment). Plaintiffs claim that they "genuinely fear retaliation" by other employees, other federal agencies, and the public. See Mot. at 6. They contend that they are "damaged by their erroneous identification" as DEIA employees, a designation that "stigmatize[s] [them] as federal employees who discriminate against Americans and their work as 'wasteful,' 'shameful' and 'divisive.'" Compl., ¶ 33. Their counsel asserts that the Administration's public statements have described DEIA offices as "dangerous, caus[ing] disastrous consequences, demeaning and immoral, illegal, [and] violative of civil rights." Branch Decl., ¶ 4. Plaintiffs further claim that "[f]ederal employees were encouraged to report DEIA programs and staff . . . to an OPM website," Mot. at 6, and their counsel alleges that

"[p]artisan political organizations have publicly posted lists of people who worked in DEIA offices with their names and pictures." Branch Decl., ¶ 4. "Although Plaintiffs' allegations regarding the danger of retaliation are not set out in great detail, they are not wholly conclusory." Does 1-2 v. Off. of Pers. Mgmt., 2025 WL 384577, at *2. And while "[d]iscovery may well render [their] concerns unsupported and unwarranted," the Court finds that their concerns are sufficiently substantiated at this early stage. See Doe v. Fed. Republic of Germany, 680 F. Supp. 3d 1, 5 (D.D.C. 2023) (second factor favored pseudonymity "particularly in light of publicly documented acts of retaliation against [similarly situated] individuals").

The third factor weighs against Plaintiffs, as they are all adults. See Mot. at 5.

The fourth factor leans towards disclosure. Generally, "anonymous litigation is more acceptable when the defendant is a governmental body because government defendants 'do not share the concerns about "reputation" that private individuals have when they are publicly charged with wrongdoing.'" J.W. v. Dist. of Columbia, 318 F.R.D. 196, 201 (D.D.C. 2016) (quoting Doe v. Cabrera, 307 F.R.D. 1, 8 (D.D.C. 2014)). In such cases, the Court "tie[s] [this] factor's outcome to the nature of the relief sought." Doe v. Blinken, No. 24-1629, ECF No. 3 (Mem. Op.) at 5 (D.D.C. June 11, 2024) ("When a plaintiff requests individualized relief against a government defendant, . . . the fourth factor favors pseudonymity.") (citation omitted); see also Doe v. ICE, No. 24-617, ECF No. 9 (Mem. Op.) at 5 (D.D.C. Mar. 8, 2024) (fourth factor favored pseudonymity where "Plaintiff allege[d] deficiencies in ICE's compliance with FOIA solely with respect to his individual request"); T.F. v. Dist. of Columbia, No. 23-3612, ECF No. 4 (Mem. Op.) at 4 (D.D.C. Dec. 7, 2023) (similar where "Plaintiff [sought] to vindicate merely his individual right to a Free and Appropriate Public Education under IDEA") (quotation marks omitted).

B5

The "public interest" in disclosure is "intensified," however, "when [a party] files a suit against the government" in a manner that may "alter the operation of public law both as applied to it and, by virtue of the legal arguments presented, to other parties going forward."  In re Sealed Case, 971 F.3d at 329.  Here, beyond declaratory relief and a public recantation by Defendant, Plaintiffs seek to preliminarily and permanently enjoin him from designating the entire OEA as a DEIA office, which would provide more than individualized relief.  See Compl., ¶¶ 27–36; see also In re Sealed Case, 971 F.3d at 329 (public has "interest in open and transparent proceedings" where "the subject matter of the suit is whether the agency has reasonably and evenhandedly applied the statutory and regulatory scheme"); Sponsor v. Mayorkas, 2023 WL 2598685, at *2 (D.D.C. Mar. 22, 2023) (fourth factor favored disclosure where suit "implicate[d] the more broadly applicable" APA and Fourteenth Amendment).

The fifth and final factor favors disclosure of Plaintiffs' identities, at least to Defendant. This factor considers whether allowing Plaintiffs to proceed pseudonymously would pose a "risk of unfairness" to the opposing party.  In re Sealed Case, 971 F.3d at 327 (quotation marks omitted).  "When pseudonymous status hides the suing party's identity from the defendant, that lack of openness can implicate significant due process concerns."  Id. at 326 n.1.  These concerns are not implicated, however, where a defendant knows a plaintiff's identity.  See id.; see also Sponsor, 2023 WL 2598685, at *3 (no risk of unfairness where plaintiffs "offered to privately identify themselves to the Government Defendants").  Here, the Government is not aware of Plaintiff's identities, see Mot. at 7, which could affect its ability to effectively litigate the case.

In sum, the factors weigh in favor of allowing Plaintiffs to remain anonymous to the public, but against shielding their identities from Defendant.

**III.     Conclusion**

The Court accordingly ORDERS that:

1.  Plaintiffs' [2] Motion to Proceed Under Pseudonym is GRANTED IN PART and
    DENIED IN PART, subject to any further consideration by the United States District
    Judge to whom this case is randomly assigned;

2.  All parties shall use the pseudonyms listed in the Complaint in all documents filed in
    this action; and

3.  Within fourteen days of this Order, Plaintiffs shall file:

    i.      A pseudonymous version of their [2] Motion and any attachments on the
            public docket; and

    ii.     A Notice containing their real names and addresses, filed under seal.


                                                            /s/ *James E. Boasberg*
                                                            JAMES E. BOASBERG
                                                            Chief Judge

Date:  April 9, 2025